612 So.2d 249 (1992)
Danny CRABTREE and Wanda Crabtree, wife of Danny Crabtree
v.
HAYES-DOCKSIDE, INC.
No. 92-CA-0433.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1992.
Writ Denied March 26, 1993.
Ashton R. O'Dwyer, Jr., Kent B. Ryan, Lemle & Kelleher, New Orleans, for appellees, Home Indem. Co.
James P. Magee, Gary J. Giepert, Beverly K. Baudouin, Baldwin & Haspel, New Orleans, for defendants/appellants, Hayes-Dockside, Inc.
Ralph S. Hubbard, III, Gordon P. Wilson, Friend, Wilson, Draper, Hubbard & Bowling, New Orleans, and Thomas W. Brunner, James M. Johnstone, Nancy J. Lemay, Wiley, Rein & Fielding, Washington, D.C., for amicus curiae Ins. Environmental Litigation Ass'n.
Before BARRY, BYRNES and WARD, JJ.
BARRY, Judge.
Hayes-Dockside, Inc. (Hayes) appeals a summary judgment which is based on the application of a "pollution exclusion" clause in a general liability policy issued by Hayes' insurer, The Home Indemnity Company (Home).
Danny and Wanda Crabtree sued Hayes for damages and injunctive relief based on the alleged emission of polyvinyl chloride (PVC) onto their home and business properties. The Crabtrees claim that PVC caused physical damages and harm to their business.
Hayes filed a third party demand against Home seeking defense and indemnification under its policy. Home filed for a summary judgment on the basis that its policy has an "Absolute Pollution Exclusion" clause.
The district court granted Hayes' motion for a new trial based on Thompson v. Temple, 580 So.2d 1133 (La.App. 4th Cir. 1991). Home re-urged its motion for summary judgment and Hayes filed a motion for partial summary judgment.
*250 The court granted summary judgment and denied Hayes' motion for partial summary judgment. Hayes submits four assignments:
1. summary judgment was improper;
2. the pollution exclusion was inapplicable to Hayes' activities;
3. PVC is not a material which falls within the pollution exclusion;
4. Hayes was entitled to a defense by Home.
An Amicus brief was filed by the Insurance Environmental Litigation Association, a trade association of major property and casualty insurers.

BACKGROUND
Hayes provides warehouse space and transfer and bagging services. One of the products Hayes receives for bagging is PVC which is sent to Hayes via railcars and pumped into Hayes' bagging facility by hoses.
The Crabtrees operate and manage Central Self-Storage, a mini-storage unit located near Hayes' facility. Their building also serves as the Crabtrees' residence. The Crabtrees contend that, beginning in March, 1988 their home and business was inundated with PVC dust from Hayes' bagging process. Mr. Crabtree stated in his deposition that on several occasions a hose broke and PVC dust blew everywhere. He also said that whenever PVC operations are in progress and a southerly wind is blowing, the dust blows in their direction. The Crabtrees claim that the dust blanketed their furnishings and carpeting, making their home uninhabitable.
The Crabtrees also claim that the contamination impacted their business. Several Central Self-Storage tenants complained in writing of irritation due to dust in the storage units. Due to the complaints, L. Clay Spencer, a general partner of Central Self-Storage, wrote to Jim Magee of Hayes on June 14, 1988 and on September 22, 1988 to complain about the PVC. Central Self-Storage's attorney also complained to Hayes and threatened to file a lawsuit.
Mr. Crabtree allegedly suffered a severe rash covering most of his body, cancer of the eyelid, and burning sensations. Mrs. Crabtree complained of respiratory discomfort and facial blistering and burning.
Home's general liability policy's "Pollution Exclusion" provides:
This insurance does not apply: (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.
Hayes submitted the affidavit of Harry Zimmerman, a chemical engineer with experience working with PVC. He stated that PVC is not classified as hazardous or toxic and has not been implicated with causing serious physical disorders. He noted that vinyl chloride is toxic but after it is converted into PVC it becomes inert. He stated that PVC is used to make pipes for drinking water, blood bags and intravenous tubings. Robert Hinderer, who has a Ph.D. in toxicology, reiterated Mr. Zimmerman's conclusions in his affidavit. William George, Ph.D., Director of Toxicology at Tulane University, stated in his affidavit that he conducted air samplings on March 5, 1991 in and around the Hayes facility and that:
The analysis of the particulate matter collected ... indicates that airborne particulate matter from the PVC unloading operation does not present a contamination problem in the area.
James Magee, Vice-President of Hayes, stated by affidavit that the DEQ and OSHA conducted air samplings in May, 1990 and April, 1991 and found no violation.
Mr. Crabtree attached to his deposition a tag he found near the Hayes facility which Hayes had placed on its PVC bags. The tag reads:

POLYVINYL CHLORIDE (PVC)

CAUTION:
DUST OR PROCESSING VAPORS MAY CAUSE IRRITATION OF SKIN, EYES, NOSE AND THROAT.

*251 Overheating of this product may generate vapors or smoke. Use only with adequate ventilation. Avoid breathing dust or vapors generated during use. Use protective equipment to avoid thermal burns from heated product.
POLYVINYL CHLORIDE CONTAINS VINYL CHLORIDE. VINYL CHLORIDE IS A CANCER SUSPECT AGENT.
HYDROGEN CHLORIDE GASES GENERATED UNDER BURNING CONDITIONS. AVOID INHALATION OF GAS.
REFER TO PRODUCT MATERIALS SAFETY DATA SHEET BEFORE USING.

ANALYSIS
La.C.C.P. art. 966 states that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to summary judgment as a matter of law."
Although the duty of an insurer to defend is broader than the question of liability, when an exclusion is applicable as a matter of law (i.e., no coverage), there is no duty to defend. West v. Board of Commissioners of the Port of New Orleans, 591 So.2d 1358, 1360 (La.App. 4th Cir.1991). Our analysis turns on the applicability of the pollution exclusion and whether any genuine issues of material fact exist.[1]

Does the Exclusion Apply to Hayes' PVC Operation?
Hayes cites Sellers v. Seligman, 463 So.2d 697, 702 (La.App. 4th Cir.1985) for the proposition that a difference of opinion as to the meaning and applicability of the pollution exclusion is a material fact which precludes summary judgment. The exclusion in Sellers was similar to the exclusion here. Sellers involved an employee who contracted silicosis. The insurer claimed that the exclusion applied to employees who inhaled silica dust while performing sandblasting duties. The employer argued that the exclusion was never intended to cover foreseeable, work-related injuries. The Court determined that summary judgment was not appropriate to show the intent of the parties to the contract "except where their intent is clear from the contract itself." Id. at 702.
The Crabtrees are not employees of Hayes, and Hayes does not allege that the exclusion is inapplicable to individuals such as the Crabtrees. Hayes alleges that the PVC bagging operations are not activities that are encompassed in the exclusion and that PVC is not a material which falls within the pollution exclusion.
Two recent cases which are virtually identical to the provision in Home's policy discuss the intent and application of pollution exclusions.
In Thompson v. Temple, 580 So.2d 1133 (La.App. 4th Cir.1991) plaintiffs were overcome by carbon monoxide gas which leaked from a heater while they were sleeping. This Court determined:
Pollution exclusion clauses are intended to exclude coverage for active industrial polluters, when businesses knowingly emitted pollutants over extended periods of time.... That situation is totally different from a leaking gas heater within a home.... [O]n the basis of the intent of the parties, a pollution exclusion clause in a homeowner's insurance policy does not operate to exclude injuries caused by a leaking gas heater.
Thompson, 580 So.2d at 1134, 1135.
Hayes contends that its warehouse operation is not an "active industrial polluter" within the meaning of Thompson.
West, 591 So.2d at 1360, 1361 enunciates the test to determine whether an entity is a "polluter" within the meaning of the exclusion provision. In West, which considered the same exclusion provision in Hayes' policy, a fireman sued Hayes alleging that he *252 sustained lung damage through inhalation of fumes from a pesticide when he investigated a problem where the pesticide was stored. Hayes provided warehousing services and, on behalf of its client, Agricultural Chemical Corporation, arranged to store drums of the pesticide at the Dock Board's Free Trade Zone. Hayes had no involvement with the pesticide other than to arrange for storage. West alleged that Hayes knowingly accepted the barrels of pesticide in a damaged condition and/or damaged the containers in transport.
This Court determined that West was not subject to a summary judgment because the facts were sparse and it was impossible to determine whether the exclusion was applicable. West, 591 So.2d at 1361. The Court held that there was a question of fact as to whether Hayes was a polluter based on Thompson or whether Hayes only possessed the pollutant in the course of its other business. West, 591 So.2d at 1360. More specifically,
Were the injuries sustained incidental to the handling, transportation or storage of the [pesticide], or was the production and release of the pollutant one of the known consequences of the business operations?
West, 591 So.2d at 1361.
Hayes, regularly and for an extended period of time (over one year) transported PVC from railcars through a piping system to bag the substance. Hayes was in the business of transporting and packaging PVC, thus they did not "incidentally possess the [PVC] in the course of its other business." West, 591 So.2d at 1360. More importantly, one of the "known consequences" of its operation, as evidenced by the PVC tags, the complaints from the neighborhood, and the nature of the operation, was the emission of PVC dust into the atmosphere. The affidavits of James Magee and William George proved that Hayes knew PVC escaped during the bagging operation when they referred to "airborne particulate matter from the PVC unloading operation." This factual situation falls squarely within the pollution exclusion under the West test.

Is PVC a Material Covered by the Pollution Exclusion?
Hayes contends that there is a genuine issue of material fact as to whether PVC is a substance that falls within the ambit of the pollution exclusion. Hayes contends the affidavits of Mr. Zimmerman and Mr. Hinderer confirm that PVC is an inert dust "similar to sand or any other type of household dust." They point to the fact that PVC is used in manufacturing plastic blood bags and pipes for drinking water. Although a component of PVC (vinyl chloride) has been classified as hazardous by the Environmental Protection Agency, PVC is not classified as hazardous or toxic. Once vinyl chloride is transformed into PVC it becomes an inert plastic powder. Hayes asserts that there is no evidence that PVC is carcinogenic.
The exclusion provision is much broader than Hayes suggests and is not limited to damage caused by the release of hazardous or toxic materials. The fact that PVC may not be carcinogenic and is not toxic or hazardous does not mean it is not an "irritant, contaminant or pollutant", as mentioned in the exclusion. The Crabtrees' petition, which must be taken as true, claims that PVC is an "irritant" or "contaminant." The petition states "... Hayes' activities resulted in PVC dust being `continuously' discharged upon and into plaintiffs' home and business and fills the air... with noxious, offensive and penetrating dust." The Crabtrees and several of their tenants complained of severe skin and eye irritation. Importantly, the tags placed by Hayes on the bags of PVC state that dust or processing vapors may cause irritation of the skin, eyes, nose and throat. The tag warns against breathing dust or vapors. Hayes counters that the label warns against vinyl chloride and not PVC. However, the tag is boldly labeled POLYVINYL CHLORIDE (PVC) and the warnings of irritation and avoidance of inhalation clearly apply to PVC and not just vinyl chloride. The only reference on the label to vinyl chloride states, "POLYVINYL CHLORIDE CONTAINS VINYL CHLORIDE. *253 VINYL CHLORIDE IS A CANCER SUSPECT AGENT."
Thus, according to the Crabtrees' petition and Hayes' tag, PVC dust is an "irritant" or "contaminant" and clearly falls within the exclusion.
We conclude that the pollution exclusion is applicable.

Does Home Have a Duty to Provide a Defense?
An insurer's duty to defend is broader than its liability for damage claims. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (La. 1969). However, when an exclusion is applicable, meaning no coverage, there is no duty to defend. West, 591 So.2d at 1363. Home does not owe a duty to defend.
The summary judgment is affirmed.
AFFIRMED.
NOTES
[1] Hayes also alleges in its brief that a genuine issue of material fact exists regarding whether the PVC caused the Crabtrees' physical injuries. This argument is immaterial to our analysis. If the PVC did not cause the injuries then neither Hayes nor Home would be liable.