PRESENT: Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Carrico, S.J.

NATIONAL HOUSING BUILDING CORPORATION

OPINION BY
v. Record No. 030269      JUSTICE G. STEVEN AGEE
JANUARY 16, 2004

ACORDIA OF VIRGINIA INSURANCE
AGENCY, INC., T/A ACORDIA OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

National Housing Building Corporation ("NHBC") brought suit against Acordia of Virginia Insurance Agency, Inc. ("Acordia"), for negligence and breach of an oral contract by failing to include NHBC as a named insured on a policy of builders risk insurance. The trial court granted Acordia's motion to strike NHBC's evidence for failure to prove "a covered cause of loss," even though it found that Acordia was negligent in failing to list NHBC as a named insured on the policy.

On appeal, NHBC asserts ten assignments of error, all of which revolve around the trial court's refusal to allow recovery for expenses incurred in "mitigating" defects in the construction covered by the policy.

For the reasons that follow, we will affirm the judgment of the trial court.

I.

Madison Ridge, L.P. ("Madison Ridge") hired NHBC as a general contractor to build the Madison Ridge apartment complex in Harrisonburg, Virginia, (the "Project"). National Housing

Corporation ("NHC"), as agent for NHBC, negotiated with Acordia to procure a builders risk insurance policy covering NHBC and other entities for work on several construction projects, including the Project. Acordia obtained a builders risk insurance policy from Security Insurance of Hartford ("Security") and intended that NHBC be an insured under that policy ("the Policy"). Acordia admitted, however, that it never asked Security to list NHBC as a named insured and, in fact, NHBC was not a named insured under the Policy.

The Project was built on a steep slope that required the construction of multiple retaining walls. The retaining walls constrained the earth behind them which, in turn, supported apartment buildings further up the slope from the walls. NHBC does not dispute that it defectively designed and built the retaining walls because its specifications failed to properly consider the steep incline of the Project.

In the early months of 1998 NHBC requested that a civil engineer examine one of the retaining walls (Wall 1-2) that had moved forward approximately eight feet so that it was no longer straight. This condition concerned NHBC and its engineer because the soils retained by Wall 1-2 supported the other walls and the foundations of the apartment buildings uphill. Due to his concern about the structural collapse of Wall 1-2, the engineer recommended taking remedial measures to ensure the stability of the foundations for the uphill apartment buildings.

2

NHBC instituted the suggested remedial measures and eventually replaced Wall 1-2 with one designed to properly accommodate the topography of the project. Although the other walls had not failed and the apartment buildings suffered no physical damage, NHBC adopted the engineer's suggested remedial measures to underpin the foundations of those structures so as to prevent any loss or damage. No loss or damage occurred to the apartment buildings.

NHBC notified Acordia of its claimed loss for the remedial measures, and on May 5, 1998, NHBC formally requested that Acordia submit a claim under the Policy to Security. On several occasions executives at Acordia notified NHBC of its duty to mitigate any loss, but did not affirm a coverage determination had been made. Security initially denied NHBC's claim based on an exclusion in the Policy for loss "caused by or resulting from any of the following: . . . . error, omission or deficiency in designs, plans or specifications," due to the defective wall design. Subsequent to its first denial of NHBC's claim and the filing of a suit by NHBC to recover insurance proceeds, Security notified NHBC that it "was not and never had been a named insured under the policy claimed and sued upon."

NHBC then filed a motion for judgment claiming breach of contract and negligence by Acordia for the failure to include NHBC as a named insured under the Policy. NHBC claimed damages from Acordia "for engineering, repairing, and stabilizing the

3

affected walls, and underpinning buildings whose structural integrity and safety had been compromised" (the "remediation expenses").  NHBC alleged these "losses would have been covered by the policy if it had been a named insured thereunder."

At trial, Acordia questioned whether NHBC was the proper party to bring suit since Madison Ridge paid the remediation expenses.  Acordia asserted that NHBC was not obligated to cover the remediation expenses because Madison Ridge incurred the expenses and failed to "purchase or maintain" all-risk insurance covering NHBC as required by the contract between NHBC and Madison Ridge.

At the conclusion of all the evidence, Acordia renewed a motion to strike NHBC's evidence.  The trial court found that NHBC had sustained damages in the amount of $518,690.25 for the remediation expenses and that Acordia was negligent as a matter of law in failing to include NHBC as a named insured on the Policy.

The trial court then determined that NHBC could not recover against Acordia because even if NHBC had been a named insured under the Policy, its "loss" was not covered by the Policy. Since NHBC could not have recovered under the Policy, then it could not recover against Acordia.  The trial court then granted Acordia's motion to strike because NHBC failed "to prove a covered cause of loss."  We granted NHBC this appeal.

II.

> [A] court must adhere to the terms of a contract
> of insurance as written, if they are plain and
> clear and not in violation of law or inconsistent
> with public policy.  It is not our function to
> "make a new contract for the parties different
> from that plainly intended and thus create a
> liability not assumed by the insurer."

Blue Cross & Blue Shield v. Keller, 248 Va. 618, 626, 450 S.E.2d 136, 140 (1994) (quoting Pilot Life Ins. Co. v. Crosswhite, 206 Va. 558, 561, 145 S.E.2d 143, 145 (1965)).

NHBC's claim against Acordia rests on the premise that had Acordia properly fulfilled its duty as an insurance broker and caused NHBC to be listed on the Policy, then NHBC would have recovered from the insurer the remediation expenses caused by the defective wall.  In other words, if NHBC could have recovered under the Policy, it could recover against Acordia.

In sustaining Acordia's motion to strike, the trial court opined from the bench.

> I don't want to substitute my judgment for the
> jury, but the Court is making a legal finding
> that it doesn't fall within the policy, and that
> if the jury did come back and award $518,690.25,
> quite frankly I would have to take it away. . . .
> But the facts are what the facts are.  It's true
> that Acordia screwed up.  They didn't list [NHBC]
> as a named insured.  If they had listed them as a
> named insured then the result would have been the
> same.

We agree with the trial court.

The Policy provides coverage "for 'loss' to Covered Property from any of the Covered Causes of Loss."  The term "Covered Causes of Loss" is then defined as "Risks of Direct

5

Physical 'Loss' to Covered Property <u>except those causes of</u>

<u>'loss' listed in the exclusions</u>." (Emphasis added).

The Exclusions provision of the Policy then plainly

provides:

> 2.   We will not pay for a "loss" caused by
>      or resulting from any of the following:
>
>              . . . .
>
> e.   Defective materials or poor
>      workmanship; error, omission or
>      deficiency in designs, plans or
>      specifications.
>
>      This exclusion does not apply to
>      resultant "loss" to other Covered
>      Property.

There is no dispute about, and NHBC does not assign error

to, the trial court's finding that Wall 1-2 was defectively

designed and the activities NHBC undertook in anticipation of

the prospect that Wall 1-2 would fail are the basis of the

remediation expenses.  Despite the Policy's plain language

excluding loss caused by defective design from coverage under

the Policy, NHBC nonetheless claims its remediation expenses are

compensable under the "Duties in the Event of Loss" section of

the Policy, which provides in pertinent part:

> C.  DUTIES IN THE EVENT OF LOSS

> You must see that the following are done in the
> event of "loss" to Covered Property:
>
>              . . . .

6

4.    Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.  This will not increase the Limit of Insurance.  However, we will not pay for the subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

Essentially, NHBC claims it would have been under a contractual duty, had it been listed as a named insured, to have undertaken the mitigation resulting in the remediation expenses in order to prevent loss to the uphill apartment buildings, which are "Covered Property" under the Policy.  That duty, if it existed, does not afford a right to compensation to NHBC under the facts of this case.

No damage occurred to the apartment buildings or other Covered Property.  Therefore, as the trial court noted, there was no "loss" to Covered Property.  Such loss is a condition precedent to any compensation under the "Duties in the Event of Loss" section.  A " 'loss' to Covered Property", the Policy's predicate to mandatory mitigation, did not occur, and therefore no obligation to compensate NHBC arose under the Policy.

Moreover, subparagraph 4 of the "Duties in the Event of Loss" section further limits any obligation of the insurer because the contractor's expenses to protect Covered Property are to be considered "in the settlement of the claim."  The claim, under the facts of this case and policy, would be

7

"resulting from a cause of loss that is not a Covered Cause of Loss" and therefore not compensible.

In effect, NHBC attempts to bootstrap its remediation expenses into a covered claim through the "Duties in the Event of Loss" provision, despite the clear exclusion from coverage for loss caused by NHBC's defective design.  We agree with the trial court that the Policy's plain language does not permit NHBC to circumvent the exclusion from coverage in this manner and recoup its remediation expenses.  See Southern Cal. Edison Co. v. Harbor Ins. Co., 83 Cal. App. 3d 747, 759-60 (1978) ("The duty of an insured to prevent and mitigate insurable loss and the obligation of the insurer to reimburse for expenses so incurred are separate questions.  The fulfillment of the duty to mitigate does not necessarily give rise to the obligation of reimbursement . . . .").

Even if the Policy does not permit NHBC to recover its remediation expenses, NHBC claims that its common law duty to mitigate damages allows recovery of the remediation expenses from Acordia.  Usually, the failure to mitigate damages is an affirmative defense and, therefore, on that point the breaching party, not the injured party, has the burden to produce evidence.  Marefield Meadows, Inc. v. Lorenz, 245 Va. 255, 266, 427 S.E.2d 363, 369 (1993).  However, this case does not involve a failure to mitigate damages.

8

In a case such as this, where the injured party asserts as part of his recovery the expense of taking corrective measures to mitigate the potential liability of the defendant, the cost of mitigation is simply another element of his damages. It is axiomatic that where "there is no liability, . . . there can be no recovery." Southern Railway Co. v. Lewis, 113 Va. 117, 120, 73 S.E. 469, 470 (1912). NHBC's theory of liability is that but for Acordia's negligence, its damages, including the cost of mitigation, would have been recoverable under the insurance contract. As we have demonstrated, however, those losses were not a liability covered by the policy and, thus, Acordia's negligence was not a proximate cause of NHBC's losses. Regardless of whether NHBC premises its theory of recovery on contract law or common law, it cannot recover damages where there is no liability.

### III.

For the reasons stated above, we find that even if NHBC had been a named insured on the Policy, the Policy did not provide coverage for the remediation expenses it now seeks against Acordia. Consequently, NHBC has no cognizable claim against Acordia either in contract or tort. The trial court did not err

in granting Acordia's motion to strike NHBC's evidence.

Therefore, the judgment of the trial court will be affirmed.[*]

<u>Affirmed</u>.

---

[*] Having resolved NHBC's assignments of error in favor of Acordia, we do not address any of Acordia's assignments of cross-error.