STATE AUTO PROPERTY AND
CASUALTY INSURANCE
COMPANY, Plaintiff,

v.

Edwin L. GORSUCH, et
al., Defendants.

No. 1:03CV00128.

United States District Court,
W.D. Virginia,
Abingdon Division.

July 8, 2004.

Jane S. Glenn, Melissa W. Robinson, Jones, Glenn & Robinson, PLC, Roanoke, Virginia, for Plaintiff.

J. Rudy Austin, Karen M. Coon, Gentry, Locke, Rakes & Moore, LLP, Roanoke, Virginia, for Defendants Edwin L. Gorsuch, Kathy J. Gorsuch, and Gorsuch Enterprises, Inc.

William M. Moffet, Laura E. Wilson, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants William Russell Stevenson and BH & P Mine, Tire and Supply, Inc.

## OPINION

JONES, Chief Judge.

In this insurance coverage dispute governed by Virginia law, the insurance company seeks a declaratory judgment that it has no duty to defend a tort claim filed against its insured for damages resulting from a flooding event. Before me are cross motions for summary judgment, which I resolve in the defendants' favor.[1]

### I

The present dispute arises out of a general commercial liability insurance policy issued by plaintiff State Auto Property and Casualty Insurance Company ("State Auto") to defendant BH & P Mine and Tire Supply, Inc. ("BH & P"). Defendants BH & P and William Russell Stevenson ("Stevenson") have been sued in tort in state court by defendants Edwin L. Gorsuch, Kathy J. Gorsuch, and Gorsuch Enterprises, Inc. (collectively "the Gorsuches") for flood damage allegedly caused by Stevenson and BH & P. State Auto maintains that it is not obligated to provide coverage for such a claim. It filed this action seeking a declaration that it does not have a duty to defend or indemnify Stevenson and BH & P because Stevenson was not an insured under the policy, State Auto was not provided timely notice of the occurrence, and flood damages are exclud-

ed from coverage under the policy's pollution exclusion clause.[2] After completing discovery, the parties have filed cross motions for summary judgment, which are presently before me.

The essential facts of the case, either undisputed or, where disputed, recited in the light most favorable to the non-movant on the summary judgment record, are as follows.

During the relevant time period, defendant Stevenson owned a parcel of land in the Adria section of Tazewell County, Virginia. Although titled in his name, the land was primarily used for business purposes by BH & P, which was a mining equipment supply company and of which Stevenson was the president and sole shareholder. An unnamed tributary of Johnson's Branch flowed through the parcel of land, effectively dividing it. The plot adjacent to the public roadway was easily accessible, and BH & P had located its warehouse and supplies on this portion. The second plot was not accessible by public roadway and could only be reached by crossing the tributary, making it impractical for regular usage by BH & P. In April, 1999, Stevenson, acting on behalf of BH & P and aiming to make accessible the portion of the land otherwise inaccessible, contracted with Triple H Construction ("Triple H") to install culverts in the creek, at a point located within Stevenson's property. The culverts, by design, allowed an access path to be built across the stream while still permitting the water in the stream to continue to flow in its normal manner.

1. Jurisdiction in this court is proper pursuant to diversity of citizenship and amount in controversy. *See* 28 U.S.C.A. § 1332(a) (West 1993 & Supp.2004).

2. The Complaint only seeks a declaration regarding State Auto's coverage obligations towards Stevenson because the underlying tort action filed by the Gorsuches initially named

only Stevenson as a defendant. Thereafter, the Gorsuches filed a Second Amended Motion for Judgment, adding BH & P as a defendant. Accordingly, State Auto now requests declarations declining coverage against both Stevenson and BH & P. (State Auto Summ. J. Mem. 1–2.) The Complaint will be deemed amended in this regard. *See* Fed.R.Civ.P. 15(b).

At all times relevant to the present dispute, the Adria property was insured under a general commercial liability policy issued to BH & P by State Auto.[3] BH & P had secured the policy through Robin Harman, an insurance agent at Litton Insurance Associates. Harman had been Stevenson and BH & P's insurance agent for a number of years prior to the occurrence of the incident presently at issue.

On July 8, 2001, Tazewell County sustained heavy rains that increased the volume of water flowing through Johnson's Branch. The culverts installed by Triple H were not large enough to handle this increased volume of water, causing flooding upstream. The Gorsuches owned property along Johnson's Branch upstream of the Stevenson property and operated a gasoline station and convenience store on that property. As a result of the water's inability to adequately flow through the culverts, the Gorsuches' property was flooded, causing property damage and loss of business, for which the Gorsuches later filed the underlying tort action.[4]

During discovery depositions in the present action, Stevenson testified that, within days of the flood, he had heard rumors that the Gorsuches sustained damages as a result of the flood and that they believed that the culverts on Stevenson's property were a primary contributing factor to the flooding. Knowing that the Gorsuches were thinking of suing him, Stevenson related that he had contacted Harman within a week of the incident to confirm that the Adria property was included under BH & P's commercial liability insurance policy with State Auto. Harman verified the matter with an underwriter at State Auto and assured Stevenson that the property was covered. Stevenson also maintained that he had told Harman at this time about the Gorsuches' allegations that the culverts had caused the upstream flooding and that he and Harman discussed the flooding and the potential lawsuits more than a dozen times, both in person and via telephone, in the ensuing two years. He also recounted that, during this time period, he had frequently gone back and forth between his attorney Eric Whitesell and Harman to get appropriate documents and answers to specific questions relating to the potential claim.[5]

Harman's recollection of these events differs. She related that Stevenson had come to see her at her office on August 15, 2001, expressing concern that the Adria property was not listed on the policy endorsement he had recently received from State Auto. Harman assured him the property was covered. She testified at her deposition that, although "everybody" in Tazewell County had known that there had been a bad flood recently, she did not remember that Stevenson had told her at that time that his question about the Adria property being listed had stemmed from his concern about a potential claim from the Gorsuches. (Harman Dep. 57–58.) After this particular meeting, Harman gave Stevenson a copy of the original poli-

---

3. Although the record indicates that the Adria property was not specifically listed on the Policy Schedule for a period of time, it is undisputed that it was covered under the policy at all times during which the policy was in effect. (Stevenson Summ. J. Br. Ex. A; Harman Dep. 47–48.)

4. The record indicates that, within thirty days of this flood, the Army Corps of Engineers began investigating the installation of the cul-

verts. The Corps requested Stevenson to commission a study to show whether the pipes were capable of handling high water levels and thereafter directed that the culverts be removed.

5. However, it is undisputed that at no time prior to the filing of the underlying tort action did Stevenson or his attorney notify Harman or State Auto of the incident in writing.

cy application to take with him but maintains that she did not know he was taking the copy to allow his attorney to review it.

Harman recalled first having heard rumors in May 2002 of Stevenson possibly being sued due to the upstream flooding.[6] When asked at her deposition why she did not notify State Auto at this time of what she had heard, Harman stated, "I don't call every rumor I heard [sic]. Rumors are rumors .... I figured if Bill had a problem, Bill would call." (*Id.* at 73.) She remembered first having discussed the flood and potential liability with Stevenson on March 13, 2003, when she had stopped by his place of business to discuss other unrelated matters.

The rumors heard by Stevenson and Harman proved themselves to be true when the Gorsuches sent a letter to Stevenson's attorney Whitesell on May 6, 2002, saying they believed the culverts had been unlawfully installed and had to be removed. Whitesell told Stevenson of the development, and Stevenson claims he notified Harman the same day. Harman disagrees, saying she did not receive notice of this correspondence. The Gorsuches subsequently filed suit against Stevenson in April 2003. Harmon learned of the suit on April 14, 2003, at which time she completed a form entitled "General Liability Notice of Occurrence/Claim" and sent it to State Auto's office in Greensboro, North Carolina. (Stevenson Summ. J. Br. Ex. K1.)

After an initial evaluation of the claim, Sharon Heyman, a Senior Claims Representative with State Auto, sent a reservation of rights letter to Stevenson on April 25, 2003, and sent a copy to Harman and Whitesell. The letter stated that State Auto was reserving its right to deny coverage on the grounds that Stevenson was not an insured party, that the policy's pollution exclusion clause precluded coverage, and that Stevenson and BH & P had violated a policy condition by failing to timely notify State Auto of the flooding incident. State Auto subsequently filed the present declaratory judgment action on October 1, 2003, invoking the same arguments, and later mailed a copy of the reservation of rights letter to the Gorsuches on April 14, 2004.

Having completed discovery, State Auto, Stevenson and BH & P, and the Gorsuches have filed separate motions for summary judgment. The defendants contend that both BH & P and Stevenson are insured under the policy, that the pollution exclusion does not apply to the facts of the case, and that State Auto waived its right to rely on the breach-of-policy defense when it failed to timely notify the Gorsuches of its intent to rely on this defense. State Auto, in turn, has filed a Motion for Summary Judgment contending that it is entitled to judgment as a matter of law because the unambiguous language of the pollution exclusion clause precludes coverage for the claims made in the underlying tort action by the Gorsuches.[7] The issues have been briefed, and the motions are now ripe for decision.

II

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

---

**6.** A second flood occurred on May 2, 2002, but is not at issue in the present case.

**7.** State Auto represents that it is not presently seeking summary judgment on the ground that Stevenson and BH & P breached a policy provision by failing to notify the insurer in a timely manner of the possibility of a claim because when and how notice was provided remains a disputed issue of fact. (State Auto Summ. J. Mem. 1 n. 1.)

that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327, 106 S.Ct. 2548. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir.1993) (internal quotation marks omitted). Summary judgment is appropriate only if there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### III

▮▮▮ The parties agree that federal courts sitting pursuant to their diversity jurisdiction must apply the law of the forum state, which, here, is Virginia. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Virginia choice of law rules dictate that an insurance policy, like other contracts, is to be applied and interpreted in accordance with the law of the state in which the contract was made. *Lexie v. State Farm Mut. Auto. Ins. Co.,* 251 Va. 390, 469 S.E.2d 61, 63 (1996). The evidence shows that the general commercial liability insurance policy was delivered to BH & P in Virginia and provided coverage for businesses that were all located and operated in Virginia. Thus, the applicable law is that of Virginia.

▮▮▮ At issue in the present motions is State Auto's duty to defend Stevenson and BH & P against the underlying tort action. In Virginia, an insurer's duty to defend is broader than its duty to indemnify, meaning an insurer may be obligated under a valid policy to mount a defense on behalf of its insured, even if facts later brought to light indicate that there is no duty to indemnify. *See Fuisz v. Selective Ins. Co. of Am.,* 61 F.3d 238, 242 (4th Cir.1995). A duty to defend arises where "the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *Lerner v. Gen. Ins. Co. of Am.,* 219 Va. 101, 245 S.E.2d 249, 251 (1978). However, where the record is clear that an insurer is excused from providing coverage under the provisions of its policy for any possible judgment based on the allegations, no duty to defend may be found. *Town Crier, Inc. v. Hume,* 721 F.Supp. 99, 102 (E.D.Va.1989).

▮▮▮ Virginia law is also settled that insurance policies are to be constructed in line with the intent of the parties involved, as exhibited by the terms the parties have used, provided the policy does not transgress statutory requirements and is not antithetical to public policy interests. *Nat'l Hous. Bldg. Corp. v. Acordia of Va. Ins. Agency,* 267 Va. 247, 591 S.E.2d 88, 90–91 (2004). If the terms used in the policy are clear and unambiguous and not otherwise defined therein, they are to be taken in their "plain, ordinary, and popular sense." *Craig v. Dye,* 259 Va. 533, 526 S.E.2d 9, 11–12 (2000). Policy language may be ambiguous where it can reasonably have more than one meaning given its context. *Salzi v. Va. Farm Bureau Mut. Ins. Co.,* 263 Va. 52, 556 S.E.2d 758, 760 (2002). Such ambiguities are to be resolved against the insurer and in favor of coverage. *Gov't Employees Ins. Co. v. Moore,* 266 Va. 155, 580 S.E.2d 823, 828 (2003). Similarly, reasonable exclusions to coverage, when stated in the policy in clear and unambiguous language that is clearly applicable to a specific situation at hand, will be enforced. *Transcon. Ins. Co. v. RBMW, Inc.,* 262 Va. 502, 551 S.E.2d 313, 318 (2001). Where exclusionary provisions are ambiguous, they will be interpreted in a manner that provides coverage to the

insured. *Lower Chesapeake Assocs. v. Valley Forge Ins. Co.*, 260 Va. 77, 532 S.E.2d 325, 331–32 (2000).

## A

First before me are the defendants' requests for summary judgment on the issue of whether Stevenson is an insured under the terms of the policy. At the time the Gorsuches initially filed suit, being unaware of the existence of BH & P, they named only Stevenson as a defendant because the land upon which the culverts were built was owned by Stevenson and was titled in his name alone. As a result, State Auto sought to deny coverage on the grounds that the policy was issued to BH & P and that Stevenson would only be an insured if he was an executive officer or director and only with respect to his official duties. However, in filing his responsive pleading in the underlying tort action, Stevenson clarified that he was acting on behalf of BH & P in ordering the culverts to be installed and that the Adria property, although legally owned by him, was used only by BH & P to store, manufacture, and repair mining equipment. The Gorsuches accordingly amended their Motion for Judgment and added BH & P as a defendant. State Auto now concedes that Stevenson was an officer of BH & P, was acting in fulfillment of his official duties, and is therefore an insured under the policy. There remaining no disputed issue of fact as to this issue, summary judgment is properly granted in favor of the defendants, and Stevenson is deemed to be an insured under the terms of the policy as a matter of law.

## B

The second issue before me is the applicability of the policy's pollution exclusion clause to the facts at hand. In pertinent part, this provision states as follows.

This insurance does not apply to . . . "[b]odily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . [a]t or from any premises, site or location which is or was at any time owned or occupied by . . . any insured . . . . Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Stevenson Summ. J. Br. Ex. A.) The defendants argue that the clause is inapplicable to the factual situation at hand because flood water is not a pollutant and because there are no allegations that the excess water that accumulated on the Gorsuches' property was physically discharged or dispersed from the Stevenson property. Instead, they explain that the tort action is premised on the idea that "water routinely flowing through the stream could not flow through the culvert such that flooding conditions were created." (Stevenson Summ. J. Reply Br. 7.) They also urge that pollution exclusion clauses were designed to address traditional environmental contamination, and not natural disasters such as the one at hand, as evidenced by the provision's use of established "terms of art" commonly used in environmental law to refer to the improper release of hazardous materials into the environment. (*Id.* at 11.) To the contrary, State Auto maintains that the policy's pollution exclusion clause is applicable and excludes coverage because pollutants are broadly defined in the policy. It asserts that the Gorsuches' allegations in their Motion for Judgment affirm that the flood water was a liquid irritant or contaminant because these terms are defined with respect to harmfulness, which the flood waters were to the Gorsuches' property.

■ Having reviewed the pollution exclusion clause and pertinent authorities, I agree with the defendants. The language of the clause specifies that it only applies to pollutants that cause damage at premises occupied by the insured or that cause damage elsewhere after physically originating from the insured's premises. It is undisputed that there are no allegations as to the former. As to the latter, the Second Amended Motion for Judgment alleges that the "negligent, illegal, and prohibited restriction of water flow, caused by the defendants [by causing the illegal culverts to be installed], created flooding conditions that were non-existent and non-occurring prior to the installation of the culverts or after their removal." (Sec.Am. Mot. J. ¶ 18.) Although the Gorsuches further charge that the culverts caused the water in the stream to physically invade their property, there are no claims that the water was actually dislodged from the Stevenson property and landed on the Gorsuch property, making the pollution exclusion clause inapplicable.

■ However, even if I were to assume that the flood water was discharged from the Stevenson property, the unambiguous wording of the exclusion does not define water as a pollutant under the present factual circumstances. The provision, in relevant part, deems a pollutant to be "any ... liquid ... irritant or contaminant ...." (Stevenson Summ. J. Br. Ex. A.) In their plain, ordinary, and popular sense, the terms "irritant" and "contaminant" do not include excess, though not impure or unclean, waters. *See* The American Heritage Dictionary of the English Language (4th ed.2000) (defining "irritant" as "a source of irritation" and citing "tobacco smoke" and "a common eye irritant" as examples); Merriam Webster's Collegiate Dictionary 249 (10th ed.1996) (defining "contaminant" as "something that contaminates" and illustrating "contaminate" with the phrases "bacteria contaminated the

wound," "iron contaminated with phosphorous," and "water contaminated by industrial wastes"). The terms' regular usage in the legal arena has been similar. *See* Va.Code Ann. § 18.2–57.02 (Michie 1996 & Supp.2003) (referring to a "chemical irritant weapon"); Va.Code Ann. § 3.1–796.66 (Michie 1994 & Supp.2003) (referring to "carcasses, debris, food waste and excrement" as contaminants); *South Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians,* —— U.S. ——, 124 S.Ct. 1537, 1538, 158 L.Ed.2d 264 (2004) (referring to phosphorous absorbed by rain as a contaminant); *Lindahl v. Office of Pers. Mgmt.,* 470 U.S. 768, 775, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (referring to "chemical irritants" that aggravated the plaintiff's bronchitic condition); *Fauntleroy v. Surry County Sch. Bd.,* No. 1727–03–1, 2003 WL 22887892, at *2 (Va.Ct.App. Dec.9, 2003) (unpublished) (referring to "environmental irritants" that exacerbated the plaintiff's asthmatic condition); *Bean v. Asbestos Corp.,* Consolidated Law Nos. 95–52, 71, 234, & 366–426, 1998 WL 972122, at *17 (Va. Cir. Ct. Feb.26, 1998) (referring to asbestos minerals as contaminants).

In addition, the remaining language comprising the pollution exclusion clause informs the meaning of "contaminant" and "irritant." It refers to "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste[,]" all of which are traditional industrial pollutants that defile the environment. (Stevenson Summ. J. Br. Ex. A.) The terms "discharge, dispersal, seepage, migration, release" and "escape" are also characteristically environmental terms. *Id.; see also Essex Ins. Co. v. Avondale Mills, Inc.,* 639 So.2d 1339, 1341 (Ala. 1994). Also supporting this understanding is the history of the pollution exclusion clause, which indicates that the clause and its predecessors were drafted because "the insurance industry, concerned about public reaction to environmental pollution, de-

sired to clarify and publicize its position that [commercial general liability] policies did not indemnify knowing polluters." *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617, 622 (Md.1995) (internal citations omitted).

■ Despite the plain language of the clause, State Auto has advanced several plausible arguments to bolster its position. First, it maintains that the flood waters in question are pollutants by comparing them to situations in which the pollution exclusion clause has been applied to exclude coverage for damages resulting from the spread of "non-hazardous" materials. (State Auto Summ. J. Reply Br. 15.) [8] As a preliminary matter, the fact that even non-hazardous materials have been excluded from coverage under the pollution exclusion clause is no surprise since the clause does not require allegations of bodily injury in order to be triggered; property damage, possibly from pollutants in no way hazardous to living beings, also triggers the clause. *See Crabtree v. Hayes–Dockside, Inc.*, 612 So.2d 249, 249 (La.Ct. App.1992). In addition, the argument is misplaced because the key inquiry focuses not on the toxicity of a given substance but on whether the substance is an irritant or contaminant as understood under traditional pollution discourse. Thus, carbon monoxide released from a furnace into a two-story commercial building and causing tenants to become ill was not a pollutant for purposes of the pollution exclusion clause, while polyvinyl chloride dust, a non-toxic substance, was a pollutant when released into the air by a broken hose and carried along by the wind. *Am. States Ins. Co. v. Koloms*, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 74 (1997); *Crabtree*, 612 So.2d at 250. Accordingly, the fact that the flood waters in question were non-hazardous is not necessarily legally relevant.

In the same vein, the plaintiff cites cases that address whether certain waste materials are included under the pollution exclusion clause. These cases also do not shed any light on the factual circumstances at hand because, unlike water or flood waters, waste materials are specifically deemed to be pollutants in the standard definition of the term. *See Carova Corp. v. U.S. Fid. & Guar. Co.*, No. 2:99CV1573, 2000 U.S. Dist. LEXIS 18964, at *3–4 (E.D.Va. May 15, 2000) (offending party used "its land for waste disposal and treatment"); *Kruger Commodities, Inc. v. U.S. Fid. & Guar.*, 923 F.Supp. 1474, 1476 (M.D.Ala.1996) (offending party "operated a rendering plant [that] processed used cooking oils and animal carcasses").

Finally, State Auto likens the present case to *Pennsylvania National Mutual Casualty Insurance Co. v. Triangle Paving, Inc.*, 973 F.Supp. 560 (E.D.N.C.1996). There, sediment disturbed by a construction project flowed from the construction site and settled in downstream water sources located on private property. The district court found that "jobsite run-off from a construction site was a 'pollutant[.]'" (State Auto Summ. J. Mem. 9.)

---

8. Although State Auto cites several cases whose facts it claims involve non-hazardous materials, my reading of some of those cases indicates quite the contrary. *See Am. Contracting & Mgmt. Corp. v. Liberty Mut. Ins. Co.*, No. 164506, 1995 WL 854725, at *1 (Mich.Ct.App. June 13, 1995) (addressing a berm containing "toxic chemicals" and "oil-soaked soil which the Department of Natural Resources` ... had found to be contaminated"); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 102 (1999) (referring to individual losing consciousness due to being overcome by fumes but cited by plaintiff as discussing non-poisonous fumes); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 518 (Tex. 1995) (addressing "a toxic hydrofluoric acid cloud over a city" but cited by plaintiff as discussing non-poisonous fumes).

State Auto contends that quasi-natural runoff of sediment from one location to another is comparable to flood water backing up due to activity at one location and accumulating at another location in excess and harmful amounts. Although the application of the pollution exclusion clause to a natural element is more persuasive, a closer reading of the *Triangle Paving* holding makes it unlike the facts at hand. The court's finding that sedimentation was a pollutant for purposes of the pollution exclusion clause was premised entirely on the fact that the North Carolina legislature had enacted the Sedimentation Pollution Control Act of 1973 and had expressed significant concerns that "[t]he sedimentation of streams, lakes and other waters of [the] State constitute[d] a major pollution problem ...." *Triangle Paving*, 973 F.Supp. at 564 (quoting N.C. Gen.Stat. §§ 113A–50 to –66 (1995)). No comparable categorization of flood waters as pollutants exists in Virginia, making the cited case distinguishable and unpersuasive.

In contrast to the unique treatment of sedimentation by the North Carolina legislature and the resulting determination that it was a pollutant, other cases addressing the artificially-induced movement of natural elements have all found such substances to not be pollutants. Most persuasive are *Purity Spring Resort v. TIG Insurance Co.*, No. CIV. 99–295–JD, 2000 WL 1507429 (D.N.H. July 18, 2000) and *Incorporated Village of Cedarhurst v. Hanover Insurance Co.*, 89 N.Y.2d 293, 653 N.Y.S.2d 68, 675 N.E.2d 822 (1996). In *Purity Spring,* the court resolved a factual situation in which property owned by an operator of a natural spring site became flooded when an upstream lake owner raised the flood gates on a dam located at the lake's outlet, allowing flooding of the plaintiff's property and causing bacterial contamination of its springs. Effectively addressing the facts presently before this court, the district court held

the pollution exclusion clause inapplicable, explaining that the

> allegations are not that the water released from the lake was polluted or contaminated. Instead, the allegations are that flooding caused by the release of water from the lake resulted in contamination of the springs with surface bacteria .... A reasonable reading of [the] allegations is that the contamination claimed was the result of flooding, not that the lake water was polluted. [Thus,] release of the lake water did not constitute release of a pollutant within the meaning of the pollution exclusion in the policy.

*Purity Spring*, 2000 WL 1507429, at *5. Likewise, in *Cedarhurst,* the overflow of water and sewage from a municipal sewage system that caused several residents' basements to flood was found to not be subject to the pollution exclusion clause because the allegations in the underlying tort action stated that the injuries resulted from the "flood-like event" and did not allege "an injury from the 'polluting,' irritating or contaminating nature of the sewage." *Cedarhurst,* 653 N.Y.S.2d 68, 675 N.E.2d at 824. Thus, both of these cases further substantiate that uncontaminated water has not been treated as a pollutant under the plain and ordinary meaning of the term in the pollution exclusion clause.

For all these reasons, a reasonable person would not classify flood waters alone as pollutants, and the pollution exclusion clause is inapplicable as a matter of law to the facts at hand. I will therefore grant summary judgment on this issue in favor of the defendants.

## C

■ The final issue before me is whether State Auto has waived its right to rely on a breach-of-policy defense. Va. Code Ann. § 38.2–2226 (Michie 2002) dic-

tates that, in order for an insurer to rely on a breach-of-policy defense, the insurer must notify all claimants against the policy of its discovery of the breach. In pertinent part, the provision provides:

> Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured, the insurer shall notify the claimant or the claimant's counsel of the breach. Notification shall be given within forty-five days after discovery by the insurer of the breach or of the claim, whichever is later. Whenever, on account of such breach, ... a reservation of rights letter is sent by the insurer to the insured, notice of such action shall be given to the claimant or the claimant's counsel within forty-five days after ... the letter is sent, or after notice of the claim is received, whichever is later. Failure to give notice within forty-five days will result in a waiver of the defense based on such breach to the extent of the claim by operation of law.

*Id.*[9] As indicated by its language, the statute's purpose in placing a burden on the insurer to notify a claimant of any breaches of the terms and conditions of the policy by the insured is to allow the claimant, an outsider to the insurance contract, to take any necessary steps to protect her rights. *See Liberty Mut. Ins. Co. v. Safeco Ins. Co. of Am.*, 223 Va. 317, 325, 288 S.E.2d 469 (1982).

State Auto has attempted to decline coverage in the underlying tort action on the grounds that defendants Stevenson and BH & P breached the terms of the policy by failing to notify State Auto "as soon as practicable of an 'occurrence' or an offense which may result in a claim" (Stevenson Summ. J. Br. Ex. A), which for present purposes is the July 8, 2001 flood. The defendants have moved for summary judgment on this issue, maintaining that State Auto is precluded from invoking this affirmative defense regardless of whether there was a breach of BH & P's duty to notify. They claim that State Auto waived the right to rely on this defense because it did not, within the statutorily required time period, notify the Gorsuches of its intent to rely on the defense or of its issuance of the reservation of rights letter. The statute obligates an insurer to notify a claimant of both these developments within forty-five days of learning of the claim or the breach and of issuing the letter. The defendants point out that the Gorsuches were not notified of this defense until State Auto filed the present declaratory judgment action, well over forty-five days after State Auto learned of the Gorsuches' tort claim. The Gorsuches also learned of the reservation of rights letter almost one year after it was first issued to Stevenson. In response, State Auto argues that summary judgment on this issue is not proper because there remains a factual dispute for the jury to resolve as to

---

**9.** The provision also contains the following additional language.

> Notwithstanding the provisions of this section, in any claim in which a civil action has been filed by the claimant, the insurer shall give notice of reservation of rights in writing to the claimant, or if the claimant is represented by counsel, to claimant's counsel not less than thirty days prior to the date set for trial of the matter. The court, upon motion of the insurer and for good cause shown, may allow such notice to be given fewer than thirty days prior to the trial date. Failure to give the notice within thirty days of the trial date, or such shorter period as the court may have allowed, shall result in a waiver of the defense based on such breach to the extent of the claim by operation of law.

Va.Code Ann. § 38.2–2226 (Michie 2002). This portion of the statute protects claimants by preventing insurers from invoking breach-of-policy defenses for the first time less than thirty days before the start of trial. It is not relevant to the facts at hand.

whether Stevenson notified State Auto in a timely manner.

The defendants have persuasively invoked § 38.2–2226. Even if I were to assume that Stevenson failed to provide timely notice of the occurrence to State Auto, both the plain language and chronicled application of the provision preclude State Auto from asserting a breach-of-policy defense against the Gorsuches' claim. *See Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 227–28 (4th Cir.1999) (notification to claimant after three months waived right to defense); *Aetna Cas. & Sur. Co. v. Compass & Anchor Club, Inc.*, No. 123500, 1994 WL 1031057, at *7 (Va. Cir. Ct. Feb.24, 1994) (applying earlier version of statute which established twenty day limits and finding that notification to claimant after thirty-nine days waived right to defense).

The evidence in the record, viewed in the light most favorable to State Auto, indicates that Sharon Heyman issued a reservation of rights letter to Stevenson on April 25, 2003. Upon issuing the letter, State Auto was required to notify the Gorsuches of this action by June 9, 2003, forty five days from the date of the letter. Instead, the evidence shows without dispute that the Gorsuches learned of the letter sometime between April 12 and April 14, 2004, more than ten months after the statutory deadline. (Stevenson Summ. J. Br. Ex. M.) Thus, State Auto failed to comply with the statutory notification requisites and is barred from asserting a breach-of-policy defense.[10] I will therefore grant the defendants' motions for summary judgment on this issue.

## IV

For the foregoing reasons, plaintiff State Auto's Motion for Summary Judg-

ment will be denied, and the defendants' motions for summary judgment will be granted. Since all of the issues raised by the parties have been resolved, it is appropriate to enter final judgment for the defendants. A separate judgment will be entered herewith.

---

10. Because the statute requires the insurer to notify a claimant of both the discovery of a breach *and* the issuance of a reservation of rights letter, in light of my ruling, I need not address whether State Auto, upon discovering the breach, timely notified the Gorsuches.